UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIE LEE WILBON, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-0014** |
| **JAMES ANDERSON, ET AL.** | **SECTION "F"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (c), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

**I.      Factual Background**

Willie Lee Wilbon, III, is an inmate currently housed in the Riverbend Detention Center in Lake Providence, Louisiana.[1] He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against New Orleans Police Department Detectives James Anderson, Gerard Dugue, Marco Demma, Daniel McMullen, and Jeff Jacob.[2] Wilbon seeks $9,999,000 for mental, physical,

---

[1] Rec. Doc. 1, p. 3.

[2] *Id.* at p. 9.

and emotional damages he suffered as a result of his alleged illegal search and seizure, false arrest, and false imprisonment stemming from events which occurred on August 4, 2002.[3]

On August 4, 2002, at approximately 8:55 a.m., Detectives Daniel McMullen and Jeff Jacob observed a black Chevrolet S-10 pick up truck with limousine tinting parked in front of a gray Corsica.[4] Through a slightly opened driver's side vent, McMullen observed a passenger seated behind the driver's seat and Jacob observed a second passenger seated in the front seat. McMullen and Jacob opened the front doors of the truck and ordered the passengers out of the vehicle at gunpoint. Wilbon was then patted down for weapons and detained outside of the truck. During the course of these events, the detectives did not explain to Wilbon why he was being searched and detained. No weapons, drugs, or money were recovered from the vehicle.[5] Wilbon alleges that the detectives had recently concluded an investigation in connection with two suspects robbing a local nightclub at around 3:30 a.m.[6]

---

[3]*Id.* at p. 9.

[4]*Id.* at p. 8.

[5]Rec. Doc. 1-1, p. 4.

[6]*See* Rec. Doc. 1-1. In her official statement, which the plaintiff attached to his complaint, police officer Mary Colon relates her version of the events that transpired relative to the nightclub shooting. Colon and her partner, Christopher Russel, were dispatched in response to a call regarding an armed robbery in progress in front of Club Tango. As they approached the intersection of Spain and North Roman in their police vehicle, and were approximately 15-20 feet from the front door of Club Tango, Colon observed a black male wearing a white tee shirt walk out of the bar, take about 2 or 3 steps, and then pull out a gun and fire at least four shots. A few seconds after the first subject started shooting, a second individual wearing black pants and a black shirt walked out of the bar, paused to look for a few seconds, and then fled. The first subject, who was wearing a white tee shirt, also fled the scene. Officer Russel was fatally wounded in the shooting and died about an hour later at Charity Hospital. Colon had followed the Emergency Medical Services vehicle that was transporting Officer Russel to the hospital. As she was walking through the hall she observed the second suspect. Officer Colon pointed out the second suspect to another officer she was with and the suspect was apprehended. Colon identified the first subject in a six picture lineup and confirmed this identification during her statement, which was recorded the following day.

Wilbon was arrested and charged with committing armed robbery and murder.[7] In a supplement to his complaint, Wilbon explains that on April 26, 2005, he entered into a plea agreement with the prosecutor, who failed to abide by the terms of the agreement.[8] Nevertheless, Wilbon was not permitted to withdraw his guilty plea and he was convicted of murder. He was granted an appeal but because of the flooding caused by Hurricane Katrina, relevant transcripts were unavailable to him for this hearing.[9] Wilbon alleges a denial of due process since he was prevented from presenting a complete record of all relevant evidence.[10] He further asserts that this procedural defect renders the use of his guilty plea unconstitutional.

Wilbon requests damages for his alleged unlawful arrest and unlawful detention. From each defendant, Wilbon seeks damages of $1,000 for each day of his confinement, $3,000,000 for the infliction of physical, mental, and emotional distress, and $3,000,000 in punitive damages.[11] Wilbon seeks a total of $9,999,000 in damages.[12]

## II.  **Standard of Review for Frivolousness**

Title 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon determination that they are frivolous.

---

[7] Rec. Doc. 1, p. 3. The record states that Wilbon was convicted on April 29, 2005, but it does not explicitly state whether Wilbon was convicted for murder based on a prior, unrelated incident or based on the incident involving the armed robbery at Club Tango. Based on the facts alleged in Wilbon's complaint, he presumably seeks relief based on his allegedly unconstitutional search, arrest, and confinement in connection with the Club Tango robbery on August 4, 2002.

[8] Rec. Doc. 1-1, p. 22.

[9] *Id.* at p. 26-27.

[10] *Id.* at p. 23.

[11] Rec. Doc. 1, p. 9.

[12] Wilbon's monetary claims should still be accruing since he is still confined. However, Wilbon stated that he seeks total damages of $9,999,000.

The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.  Analysis

#### A.  § 1983 Claims

As a preliminary matter, the Court notes that Wilbon's § 1983 claims for illegal search, arrest, and confinement against defendants James Anderson, Gerard Dugue, Marco Demma, Daniel McMullen, and Jeff Jacob are long prescribed. Because there is no federal statute of limitations for § 1983 claims, the district court looks to the forum state's statute of limitations for personal injury claims. *Bd. of Regents of Univ. of New York v. Tomanio*, 446 U.S. 478, 483 (1980) (citing 42 U.S.C.

§ 1988); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (concluding § 1983 actions are best characterized as personal injury actions). The personal-injury limitations period in Louisiana is one year. *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citations omitted).

Ordinarily, a cause of action under section 1983 accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Price v. City of San Antonio, Texas*, 431 F.3d 890, 893 (5th Cir. 2005) (quotation marks omitted). In the case of a false arrest claim, The "statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 396 (2007); *Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008).

Pursuant to *Wallace*, the Fourth Amendment claims including false arrest, false imprisonment and illegal search and seizure, like those asserted by Wilbon, are analogous. *See Wallace*, 549 U.S. at 388-389 (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). In addressing these claims, the *Wallace* Court resolved that, in spite of the appearance that such claims would be barred by the rule of *Heck*, these claims nonetheless accrue when the petitioner is brought to his first judicial appearance if not before, in the case of search and seizure. *Wallace*, 549 U.S. at 393-394, 397; *Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008); *McCloud v. Jarus*, No. 09–0121, 2010 WL 103684, at *6–7 (E.D. La. Jan. 7, 2010); *Jordan v. Strain*, No. 09–3565, 2009 WL 2900013, at *2 (E.D. La. Aug. 28, 2009); *Shipp v. Richardson*, No. 3:07CV–P693–S, 2008 WL 2358859, at *2 (W.D. Ky. June 7, 2008).

The record reflects that this case was filed by the clerk of court on January 7, 2011, when pauper status was granted. In the *pro se* prisoner context, however, the date when prison officials

receive the complaint for delivery to the Court is considered the time of filing for limitations purposes. In the prisoner context, however, the date prison officials receive the complaint from the plaintiff for mailing to the court is the time of filing for limitations purposes. *See Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).[13] Wilbon signed and dated his handwritten complaint on December 29, 2010. This is presumed to be the earliest date his complaint could have been submitted to prison officials for mailing to the Court.

Although Wilbon has not provided the Court with the date of his initial appearance before a judicial officer, he has indicated that the search and arrest occurred on August 4, 2002, and he was convicted on the related charges on April 26, 2005. Most certainly, his initial appearance occurred sometime between those dates. Under the most generous of findings, his complaint was filed almost five and one-half years after his conviction and over eight years after the search and arrest leading to these claims. Accordingly, the claim was prescribed long before the present lawsuit was filed. A complaint filed beyond the applicable statute of limitations is properly dismissed as frivolous. *See, e.g.*, *Brown v. Pool*, Fed. Appx. 15, 17 (5th Cir. 2003).[14] Wilbon's claim was not within the one-year period and it should be dismissed for that reason.[15]

---

[13]The Fifth Circuit has recognized that a mailbox rule applies to matters filed in the federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir.1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir.1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir.1995).

[14]Wilbon does not list the New Orleans Police Department as a defendant in his complaint. He does, however, list it on the caption of his memorandum in support of the complaint. Rec. Doc. No. 1, p. 7. To the extent Wilbon intended to pursue claims against the New Orleans Police Department, it is not a proper defendant. The Court notes that the State of Louisiana does not recognize the New Orleans Police Department as a legal entity or person capable of being sued. *See Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't,* 350 So. 2d 236 (La. App. 3d Cir. 1977) *writ refused*, 352 So. 2d 235 (La. 1977). Accordingly, the New Orleans Police Department is not a proper defendant in this action and if Wilbon asserted claims against the New Orleans Police Department, the claims would be dismissed as frivolous.

[15]Moreover, even if the District Judge were to determine that plaintiff's claims were not prescribed, the claims would still be barred by *Heck*, 512 U.S. at 477. Where, as here, an individual is ultimately convicted of the charge for which he was arrested and that conviction remains outstanding, *Heck* requires dismissal of his Fourth Amendment claims

### B. Habeas Corpus Related Claims

As part of his request for relief, Wilbon seeks to have his current criminal charges dropped and to have his criminal record be expunged. This relief sounds in the law of habeas corpus. This civil rights proceeding is not appropriate for pursuing that type of relief. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Clarke v. Stalder*, 121 F.3d 222, 226 (5th Cir. 1997), *reh'g en banc granted and opin. vacated*, 133 F.3d 940 (5th Cir. 1997), *rev'd in part on other grounds and opin. reinstated in relevant part*, 154 F.3d 186, 187 (5th Cir. 1998) (*en banc*); *Hernandez v. Spencer*, 780 F.2d 504, 504 (5th Cir. 1986). Wilbon should pursue any such relief in a properly filed state criminal motion, post-conviction application, or federal habeas corpus proceeding, if appropriate.

## IV. Recommendation

For the foregoing reasons, it is **RECOMMENDED** Wilbon's § 1983 claims against the defendants, Detectives James Anderson, Gerrard Dugue, Marco Demma, Daniel McMullen, and Jeff Jacob, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief may be granted pursuant to 28 U.S.C. § 1915(e), § 1915A and Title 42 U.S.C. § 1997e(c), because the claims have prescribed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after

---

intertwined with the validity of his conviction. *See Wallace*, 549 U.S. at 394; *see also Queen v. Purser*, 109 Fed. Appx. 659, 660 (5th Cir. 2004); *Landor v. Hogue*, No. 07-9171, 2008 WL 243950, at *3 (E.D. La. Jan. 25, 2008); *see also*, *Johnson v. Bradford*, 72 Fed. Appx. 98, 99 (5th Cir. 2003) (search and seizure); *Hall v. Lorenz*, No. 02-50312, 2002 WL 31049457, at *1 (5th Cir. Aug. 30, 2002).

Alternatively, the claims could also be dismissed as malicious under § 1915, because he asserted these same claims in another civil rights action in this Court, Civ. Action No. 10-4281"R"(2). A complaint is malicious if the plaintiff is asserting against the same or different defendants virtually identical causes of action "arising from the same series of events and alleging many of the same facts as an earlier suit." *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir.1988). Wilbon had his opportunity to assert these claims against any and all defendants in the prior litigation. This complaint is therefore subject to dismissal as malicious. *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993).

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[16]

New Orleans, Louisiana, this 15th day of August, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[16]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.